# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.   2:22-mj-610
)
Information Associated with the Cellular Telephone )
Number Assigned Call Number (614) 377-7311 that is )
Stored at Premises Controlled by T-Mobile US, Inc. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A to the Affidavit in Support of the Application, incorporated here by reference.

located in the  Southern  District of  Ohio , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B to the Affidavit in Support of the Application, incorporated here by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| (1) 21 U.S.C. § 841(a)(1) | (1) Distribution and Possession with Intent to Distribute Controlled Substances |
| (2) 18 U.S.C. §§ 922(g)(1) and 924(a)(2) | (2) Felon in Possession of a Firearm |

The application is based on these facts:

See Affidavit in Support of the Application, incorporated here by reference.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Matthew J. Voytek IV*
*Applicant's Signature*

Matthew J. Voytek, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  9/13/2022

*Chelsey M. Vascura*
*United States Magistrate Judge*
*Judge's signature*

City and state:  Columbus, Ohio       Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (614) 377-7311 THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE US, INC. | Case No. 2:22-mj-610 <br><br> **FILED UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Matthew Voytek, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. 2703(c)(1)(A) for information associated with the cellular telephone assigned call number (614) 377-7311 ("the **TARGET PHONE**"), whose service provider is T-Mobile US, Inc. ("T-Mobile"), a wireless telephone service provider headquartered at 3625 132nd Avenue SE, Bellevue, Washington. The **TARGET PHONE** is described herein and in Attachment A, and the information to be disclosed by T-Mobile and seized by the government is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3121(b)(1).

3. I am a Special Agent with the ATF and have been since January 2022. I have experience in the investigation, apprehension, and prosecution of individuals involved in federal and state criminal offenses, the use of cellular devices to commit those offenses, and the available technology that law-enforcement officers can use to assist in identifying the users of cellular devices and their location. During my employment with ATF, I have assisted with investigating criminal violations relating to firearms, drug trafficking, and violent crime. I have participated in various aspects of criminal investigations, including interviews, physical surveillance, and the execution of search warrants. I am familiar with and have participated in investigative methods including electronic surveillance, search warrants, and the use of confidential informants.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations 21 U.S.C. § 841(a)(1) (distribution and possession with intent to distribute controlled substances) and 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (felon in possession of a firearm) [collectively, the "**SUBJECT OFFENSES**"] have been committed, are being committed, and will continue to be committed by Brett E. Collins and other unknown persons. There is also probable cause to believe that the information described in Attachment B will constitute evidence of those criminal violations and will lead to the identification of other individuals who are engaged in the commission of these offenses.

6. This Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 US.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the controlled-substance and firearm offenses being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## **PROBABLE CAUSE**

7. In August of 2022, ATF Confidential Informant #31219 ("CI #31219") advised investigators that an armed drug trafficker named Brett Collins (a/k/a "BJ") deals fentanyl, pills, and marijuana in central Ohio. As a result, the ATF Columbus Field Office commenced an investigation into Collins, who is a convicted felon.[1]

8. Between August 17 and August 29, 2022, Collins used the **TARGET PHONE** to discuss, arrange, and consummate the sale of roughly 11.6 ounces of suspected marijuana, 45 Percocet pills, and a Taurus 1911 pistol to an ATF Special Agent working in an undercover capacity through three separate deals, all of which were recorded by audio and video.

### A. The First Deal – Sale of Marijuana

9. Between August 17-18, 2022, CI #31219 corresponded with Collins via cell phone regarding Collins selling narcotics to a third-party – in truth, an ATF Special Agent who was working undercover ("SA #6134"). Collins used the **TARGET PHONE** to communicate with CI #31219 during those conversations. The following summaries do not purport to be a complete transcription of the conversations between Collins and CI #31219 on August 17th and 18th, but only a synopsis of the pertinent facts and conversation.

---

[1] I have queried the Franklin County Clerk of Courts' Website and learned that Collins was convicted of a felony offense for improper handling of a firearm (F4) in Case No. 20-cr-063. Judgment was imposed for that conviction on or about June 15, 2020.

3

10. On or about August 18th, Collins, using the **TARGET PHONE**, informed CI #31219 that he had multiple ounces of marijuana to sell. Collins provided the amount of marijuana and the sales price before following up twice to determine whether the CI and the third-party (the undercover agent) wanted to purchase the marijuana. Later that same day (August 18th), Collins agreed to sell the marijuana to SA #6134.

11. Continuing the same day, Collins arrived at a pre-determined location for the purpose of providing the undercover agent with a pre-agreed upon amount of marijuana. SA #6134 arrived with pre-recorded buy money, and the deal was recorded by audio and video devices. Collins and CI #31219 arrived together in a vehicle; the CI was driving, while Collins was the front-seat passenger. Collins and the CI then exited the vehicle. SA #6134 observed Collins with a black sling bag in his possession upon exiting the vehicle. Collins was also on his phone upon his arrival. Collins then produced a clear bag of suspected marijuana from his sling bag and provided it to SA #6134. The agent placed the bag on a scale and observed that it weighed roughly 4.6 ounces. SA #6134 then asked Collins the sales price, and Collins responded $600.00. Collins and the agent ultimately agreed upon a purchase price of $550.00 for the roughly 4.6 ounces of marijuana. SA #6134 paid Collins a total of $550.00 in undercover funds which Collins counted, acknowledged, and took into his possession.

12. During this first deal, Collins indicated to the undercover agent that he has sold firearms in the past and could sell firearms moving forward. The offer to sell firearms could amount to a separate federal offense since Collins is prohibited from possessing firearms due to his status as a convicted felon. *See* 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

4

### B. The Second Deal – Sale of Percocet Pills and Marijuana

13. Between August 20-24, 2022, Collins, using the **TARGET PHONE**, corresponded with SA #6134 regarding the sale of more controlled substances. Between those dates, Collins texted the undercover agent prices for marijuana and explained that he could sell a quarter pound of marijuana for $500.00 and a half-pound of marijuana for $850.00.

14. On August 22, 2022, Collins, using the **TARGET PHONE**, corresponded with SA #6134 via text message. Collins stated that he had Percocet 30 pills for sale. Collins explained that he could sell 100 Percocet 30 pills for $2,300.00; 20 Percocet pills for $550.00; or 10 Percocet pills for $300.00.

15. Between August 23-24, 2022, Collins, using the **TARGET PHONE**, continued to correspond with SA #6134 regarding their next drug deal. Collins ultimately agreed to sell 20 Percocet pills and four ounces of marijuana.

16. On August 24, 2022, Collins arrived at a pre-determined location to provide SA #6134 with the controlled substances. This deal again involved pre-recorded funds and was again recorded by audio and video devices. This time, Collins arrived alone. Collins exited the vehicle and greeted both the undercover agent and CI #31219, who was also at the undercover location already. SA #6134 again observed Collins with a black sling bag in his possession upon arrival. Collins opened the bag and handed SA #6134 a black plastic bag containing suspected marijuana. Collins then provided the agent twenty suspected Percocet pills which he retrieved from the same black sling bag. SA #6134 weighed the suspected marijuana on a scale and determined it to be roughly 4.4 ounces. Collins and the agent ultimately agreed on a purchase price of $1,100.00. SA #6134 then paid Collins a total of $1,100.00 in undercover funds which Collins counted, acknowledged, and took into his possession.

17. During the second deal, Collins again indicated to the undercover agent that he has sold firearms in the past and could sell firearms to the agent in the future. After that conversation, Collins, the agent, and CI #31219 exchanged departures.

### C. The Third Deal – Sale of a Firearm, Percocet Pills, and Marijuana

18. Between August 24-29, 2022, Collins, using the **TARGET PHONE**, corresponded with SA #6134 regarding the sale of more controlled substances and a firearm.

19. On August 28, 2022, Collins, using the **TARGET PHONE**, texted SA #6134 about selling a Taurus 1911 pistol, Percocet pills, and marijuana.

20. On August 29, 2022, Collins arrived at a pre-determined location to provide SA #6134 with the gun and the drugs. This deal likewise involved pre-recorded funds and was recorded by audio and video devices. This time, Collins was the driver, but he was accompanied by an unknown black female riding in the front passenger seat. Collins exited the vehicle and greeted SA #6134. Collins immediately popped the trunk of the vehicle and retrieved a black gun case from within the trunk. Collins gave the gun case and a black holster to SA #6134. Collins then retrieved a small bag of twenty-five Percocet pills and handed it to the agent. Collins then went back to the vehicle and retrieved a black plastic bag which contained suspected marijuana. Collins handed the bag to SA #6134 and stated that it contained 2.5 ounces. While this conversation occurred, SA #6134 counted the Percocet pills and weighed the suspected marijuana, which came out to roughly 2.6 ounces. Collins then stated to the agent, "$250.00 for that (marijuana), and $25.00 a piece (Percocet pills) . . . and then the gun is $475.00." SA #6134 counted out a total of $1,300.00 and handed it to Collins, who then departed. The firearm was later determined to be a Taurus 1911, 9mm pistol, bearing serial number ACA414149.

21.     In consulting with other ATF agents who are trained in determining the manufacturing origin of firearms, I learned that Taurus firearms are not manufactured in the State of Ohio.  Therefore, the Taurus 1911 pistol that Collins sold to SA #6134 travelled in and affected interstate and/or foreign commerce prior to Collins's possession of that firearm.

### D.  The TARGET PHONE'S Relationship to the Alleged Criminal Activity

22.     As detailed above, Collins used the **TARGET PHONE** to facilitate multiple unlawful sales of controlled substances and the sale of a firearm that he was prohibited from possessing by federal law.  The information sought in this application

23.     In addition, I know through training and experience that cellular telephones are commonly used, or have a relationship to, unlawful acts such as those described in this affidavit.  For example, I know that cellular telephones are commonly in the physical possession of their owners/users, which could yield information regarding the who, what, when, where, and why of the **SUBJECT OFFENSES**, including information about how Collins came into possession of the marijuana, Percocet pills, and the firearm; from whom he obtained those drugs and the firearm; when he took possession of those items; where he was located when he obtained those items; to whom else he might have marketed those drugs, the firearm, or other unlawful contraband; and other actions he may have taken in furtherance of his criminal activity.

24.     Information obtained from this warrant will be used to determine the location of the **TARGET PHONE** in relation to the deals and **SUBJECT OFFENSES** described above.  Investigators believe that the information sought will provide other locations of interest to this investigation relevant to Collins and will also assist investigators in determining his whereabouts, conducting surveillance, and further establishing his pattern of activity and the patterns of activity of others who may be involved in these offenses.

7

## E-911 PHASE II DATA AND CELL-SITE DATA

25. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data; and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.

26. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

27. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

28. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the **TARGET PHONE**, including by initiating a signal to determine the location of the **TARGET PHONE** on T-Mobile's network or with such other reference points as may reasonably be available.

29. Based on my training and experience, I know that T-Mobile can collect cell-site data about the **TARGET PHONE**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine:

8

(1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

30. The GPS and cell-site data described above are imperative in this investigation due to the difficulty in conducting surveillance on individuals engaged in armed drug trafficking. The ability to safely locate the **TARGET PHONE** while Collins is engaged in criminal activity is important to obtaining evidence for prosecution and for executing an arrest.

## AUTHORIZATION REQUEST

31. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c), authorizing the acquisition of the information described in Attachment B for a period of thirty days.

32. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until thirty days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET PHONE** would seriously jeopardize an ongoing investigation, as such disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search

9

warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See id.*

33. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference to T-Mobile's services, including by initiating a signal to determine the location of the **TARGET PHONE** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

34. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET PHONE** outside of daytime hours.

35. In accordance with this Court's local rules and standing orders, I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

## CONCLUSION

36. Based on the facts set forth in this affidavit, there is probable cause to believe that Brett Collins, a convicted felon and known drug trafficker, did knowingly commit the **SUBJECT OFFENSES**. There is also probable cause to believe that the information sought in this warrant will assist in identifying previous locations corresponding to dates and times that Collins committed those offenses. Furthermore, the information sought will assist in locating Collins in an effort to obtain further evidence of those offenses and will assist agents in determining his general location.

Respectfully submitted,

*Matthew J. Voytek IV*

Matthew Voytek, Special Agent
Bureau of Alcohol, Tobacco, Firearms,
and Explosives

Subscribed and sworn to before me this __13th__
day of September, 2022.

*Chelsey M. Vascura*

The Honorable Chelsey M. Vascura,
UNITED STATES MAGISTRATE JUDGE

### Attorney Certification Under 18 U.S.C. §§ 3121-3127

To ensure technical compliance with the Pen Register Act, 18 U.S.C. §§ 3121-3127, the warrant applied for herein will also function as a pen register order. I, an attorney for the Government, certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the ATF. *See* 18 U.S.C. §§ 3122(b), 3123(b).

s/Noah R. Litton
Noah R. Litton
Assistant United States Attorney
Southern District of Ohio

## ATTACHMENT A

### Property to Be Searched

1. This warrant applies to records and information associated with the cellular telephone assigned call number (614) 377-7311 (the "**TARGET PHONE**"), that are stored at premises controlled by the wireless service provider (T-Mobile), a company headquartered at 3625 132nd Avenue SE, Bellevue, Washington.

2. The requested records and information associated with the **TARGET PHONE** that are described more fully in the accompanying affidavit and in Attachment B that are within the possession, custody, or control of T-Mobile.

## ATTACHMENT B

### Particular Things to Be Seized

I. **Information to Be Disclosed by the Provider (T-Mobile)**

    A. **Location Data to Be Disclosed by the Provider**

All information about the location of the **TARGET PHONE** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **TARGET PHONE**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **TARGET PHONE** on T-Mobile's wireless network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T- Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a (b)(2).

**B. Additional Records and Other Information to Be Disclosed by the Provider**

T-Mobile is also required to disclose to the government the following records and information concerning the **TARGET PHONE** described in Attachment A, if those records and information are within the possession, custody, or control of the company, for the time period of August 18, 2022, through the date this warrant is issued:

Customer/Subscriber Information

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);
3. Local and long-distance telephone connection records;
4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ["IP"] addresses) associated with those sessions;
5. Length of service (including start date) and types of services utilized;
6. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ["ESN"], Mobile Electronic Identity Numbers ["MEIN"], Mobile Equipment Identifier ["MEID"], Mobile Identification Numbers ["MIN"], Subscriber Identity Modules ["SIM"], Mobile Subscriber Integrated Services Digital Network Number ["MSISDN"], International Mobile Subscriber Identifiers ["IMSI"], or International Mobile Equipment Identities ["IMEI"]);
7. Other subscriber names or identities (including the registration Internet Protocol ["IP"] addresses); and
8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

<u>Other Records and Information from August 18, 2022, to current, including</u>

1. Information about each communication sent or received by the **TARGET PHONE**, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers); and

2. All data about which "cell towers" (i.e, antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the **TARGET PHONE**.

II. **Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. § 841(a)(1) (distribution and possession with intent to distribute controlled substances) and 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (felon in possession of a firearm).

15